UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RENAN MARTINEZ,

                            Petitioner,

        v.

STUART SHERMAN,

                            Respondent.

Case No.  16-cv-04909-SI

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re:  Docket No. 1

## INTRODUCTION

Renan Martinez filed this *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254. The court issued an order to show cause why the writ should not be granted.  Respondent has filed an answer, and Martinez has filed a traverse.  For the reasons discussed below, the petition will be DENIED.

## BACKGROUND

Renan Martinez challenges his second degree murder conviction arising from an incident in which he fled from the police in a car, engaged in several very dangerous driving maneuvers, and caused a crash that killed the passenger in his car.   The California Court of Appeal described the facts of the crime:

> At about 8:00 p.m. on June 9, 2010, defendant was driving a green Honda westbound on Tully Road in San Jose. His girlfriend Mayra Barajas was in the passenger seat of the Honda. It was not dark. Two police officers in a marked patrol car noticed that the Honda had a "[c]racked windshield, [and was] straddling lanes, and following too closely." The Honda was travelling at 30 to 40 miles per hour and was less than a car length from the car in front of it. The speed limit on Tully Road was 40 miles per hour. As the Honda passed through the intersection of Tully Road and Seventh Street, the police officers activated their patrol vehicle's emergency lights and siren and initiated a vehicle stop. The Honda moved to the

right, slowed down, and came to a stop. A few seconds later, the Honda moved forward another car length or two and again came to a stop. The patrol vehicle parked behind it.

The two vehicles were about 1000 feet west of the Seventh Street intersection. One police officer had gotten out of the patrol car and the other had begun to get out when the Honda suddenly "just takes off, makes a U-turn, and heads in the opposite direction." Defendant drove the Honda across three lanes of traffic, up onto the raised median between the westbound and eastbound lanes on Tully, and then skidded across the median before coming down from the median on the other side of the road facing eastbound. The Honda then sped up and proceeded eastbound on Tully back toward the Seventh Street intersection.

Traffic on Tully Road was heavy at this time. There were cars in every lane, and no room to weave around the traffic. All three lanes of eastbound Tully were stopped in advance of the Seventh Street intersection with at least 20 cars waiting for the red light to change. Traffic was proceeding through the intersection from Seventh Street. Defendant drove the Honda quickly along the shoulder and bike lane and entered the intersection against the red light. The Honda was going between 57 and 66 miles per hour just before the collision occurred. (footnote omitted) The front of defendant's vehicle collided with the back of a vehicle that had entered the intersection on a green light. Defendant's vehicle spun around and collided with a light pole. Before the collision, defendant did not honk or brake.

The police did not pursue the Honda because their "pursuit policy" precluded it. Instead, they turned off their emergency lights and watched the Honda head "at a high rate of speed" toward the intersection of Tully and Seventh. The police officers, who could see that the Tully light was red, lost sight of the Honda after it went into the bike lane and became obscured by the vehicles waiting at the intersection. A second later, the police officers heard a "loud collision" and saw "some debris fly through the air and some smoke." They immediately proceeded to the site of the crash, where they found the Honda "literally wrapped around" a pole. Defendant was trying to get out of the driver's side door of the Honda. In order to extract Barajas and defendant from the Honda, the roof of the Honda had to be cut off. Barajas suffered a severe head injury, a broken neck, and other serious injuries. She never regained consciousness and died from her injuries a few days later.

California Court of Appeal Opinion filed February 9, 2016 in *People v. Martinez*, No. H039350, 2016 WL 519166, *1-2 (Cal. Ct. App. February 9, 2016) ("Martinez").

Following a jury trial in San Jose Superior Court, Martinez was found guilty of second-degree murder and was found to have suffered a prior serious felony conviction and prison term. He was sentenced to 30 years to life, consecutive to a 5-year term, in prison. Martinez appealed. The California Court of Appeal affirmed his conviction. The California Supreme Court denied his petition for review.

Martinez then filed this action. In his federal petition for writ of habeas corpus, he alleges the following claims: (1) Martinez's constitutional rights to present a defense and to due process were violated when the trial court refused to instruct on less culpable offenses, precluded defense

2

counsel from arguing the defense theory of the case while permitting certain argument by the prosecutor, and permitted the prosecutor to argue for guilt by contrasting Martinez's crime and mental state with the uncharged offense of first degree murder and express malice; (2) the trial court's refusal to instruct on manslaughter violated Martinez's right to due process; (3) "the unequal treatment of the defense counsel's and prosecutor's requests [for] instructions and argument on uncharged mental states violated [p]etitioner's federal due process rights," Docket No. 1 at 15; (4) "any advice from counsel that there was a reasonable probability of acquittal was unsound," and infected Martinez's decision to refuse a plea offer, *id*. at 16; (5) "because state law entitled petitioner to instructions on manslaughter, the state courts could not apply a narrower definition of manslaughter retroactively to petitioner," *id*. at 17 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964)); (6) the admission of prejudicial evidence of prior bad acts was "federal constitutional error," *id*. at 18; and (7) the cumulative effect of the foregoing errors warrants relief.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Santa Clara County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## LEGAL STANDARD

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id*. at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *see also Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). "When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803. The presumption that a later summary denial rests on the same reasoning as the earlier reasoned decision is a rebuttable presumption and can be overcome by strong evidence. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016). Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default and applies to decisions on the merits. *Barker*, 423 F.3d at 1092 n.3. In other words, when the last reasoned decision is a decision on the merits, the habeas court can look through later summary denials to apply § 2254(d) to the last reasoned decision.

Section 2254(d) generally applies to unexplained as well as reasoned decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

4

or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). When the state court has denied a federal constitutional claim on the merits without explanation, the federal habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Id*. at 102.

## DISCUSSION

A.  <u>Murder and Manslaughter</u>

Before turning to Martinez's claims, it is helpful to review the levels of homicides because several of the issues in this habeas action concern the distinctions between second degree murder and manslaughter. "Murder is the unlawful killing of a human being . . . with malice aforethought." Cal. Penal Code § 187(a). Malice aforethought may be express or implied. *Id*. at § 188. Express malice is "an intent to kill" and implied malice exists "when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses. A killing with express malice formed willfully, deliberately, and with premeditation constitutes first degree murder." *People v. Beltran*, 56 Cal. 4th 935, 941-42 (Cal. 2013) (citation omitted). Second degree murder is an unlawful killing with malice aforethought "'but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.'" *Id.* at 942 (citation omitted).

"Manslaughter is the unlawful killing of a human being without malice." Cal. Penal Code § 192. If the killing without malice is done "upon a sudden quarrel or heat of passion," it is voluntary manslaughter. *Id*. at § 192(a). "Heat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." *Beltran*, 56 Cal. 4th at 942. Voluntary manslaughter based on a heat-of-passion theory has both a subjective and an objective component. *People v. Moye*, 47 Cal. 4th 537, 549 (Cal. 2009). For the subjective component, the defendant must actually, subjectively, kill the victim in the heat of passion, that is,

5

anger, rage, or any violent, intense, high-wrought or enthusiastic emotion, except revenge. *People v. Breverman*, 19 Cal. 4th 142, 163 (Cal. 1998). The objective component requires that the defendant's passion have an objectively reasonable basis. That is, there must be evidence that the victim provoked the defendant, and that conduct was "sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." *Moye*, 47 Cal. 4th at 550. The provocation need not be such that it would prompt an ordinary person of average disposition to kill someone, but only that it "would render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'" *Beltran*, 56 Cal. 4th at 957 (quoting *People v. Logan*, 175 Cal. 45, 49 (Cal. 1917)). Voluntary manslaughter is a lesser-included offense of the crime of murder. *Id.* at 942.

Involuntary manslaughter was not a possibility here because the crime of involuntary manslaughter "shall not apply to acts committed in the driving of a vehicle." Cal. Penal Code § 192(b).

There are several types of vehicular manslaughter in California, including "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." Cal. Penal Code § 192(c)(1). Vehicular manslaughter is a lesser-related, rather than a lesser-included, offense to murder. *See People v. Hicks*, 4 Cal. 5th 203, 210 (Cal. 2017).

B.   Due Process And The Right To Present A Defense: Claims Based On
     The Charges, The Instructions And The Closing Argument (Claim 1)

Martinez's first claim is an agglomeration of several issues: He contends that the trial court "violated [his] constitutional rights to present a defense, to closing argument and to due process by refusing to instruct on less culpable offenses and by precluding defense counsel from arguing the defense theory of the case that the crime committed by petitioner was more accurately described as manslaughter and the mental state was more accurately described as gross negligence,

while the court permitted the prosecutor to argue for guilt by contrasting petitioner's crime and mental state with the uncharged offense of first degree murder and express malice." Docket No. 1 at 6. The sprawling nature of the claim is further complicated by the inclusion of several arguments that resurface later in the petition as separate claims (e.g., uneven treatment of the parties (*id.* at 9-10, 15) and counsel's advice regarding a plea (*id.* at 12, 16)).

1.    <u>No Due Process Right To Have a Charge Not Be Dismissed</u>

Martinez originally was charged with vehicular manslaughter and murder, although the prosecutor later dismissed the vehicular manslaughter count. Martinez argues that he was prejudiced when the trial court failed to exercise its discretion to deny the government's motion to dismiss the vehicular manslaughter count. (Although he does not list this as a separate claim, the issue is present in Claim 1 and provides the backdrop for some of his other arguments. *See* Docket No. 1 at 7; Docket No. 18 at 5.)

The California Court of Appeal described what happened in the lower court:

> Shortly before trial, the prosecutor moved to dismiss the vehicular manslaughter count. This was not a surprise to the defense, as defendant's trial counsel had "known for some time," at least a month, that the prosecutor intended to dismiss that count. The defense opposed the request. It argued that the vehicular manslaughter count should not be dismissed because, "[i]f dismissed, this action would preclude the jury an opportunity to find Mr. Martinez guilty of this crime as the court is without power to give the instruction for what has been held is that the offense of vehicular manslaughter is a lesser related offense, and would require the prosecutor's consent to instruct the jury upon. Such would be a denial of Due Process under both Federal and State Constitutions." (footnote omitted) If this count was dismissed, "the court may be forced to instruct on the law of second degree murder and only that; a choice that leaves the trier of fact with an all-or-nothing gamble." Defendant's trial counsel also argued that it would be "fundamentally unfair to . . . have an opportunity taken away from the defense to have the jury" consider a lesser alternative offense.

*Martinez*, at *3.

The trial court had granted the prosecutor's request, finding that it did not have the power to reject the prosecutor's decision concerning what to charge. The California Court of Appeal explained that, in California, a trial court has the sole authority to dismiss actions in the furtherance of justice and the trial court therefore erred in failing to exercise that discretion to decide whether or not to dismiss the vehicular manslaughter count. *Id.* However, the appellate

1   court rejected Martinez's claim, finding that the trial court's dismissal of the count was not

2   prejudicial under state law. Even assuming that it would have been an abuse of discretion to

3   dismiss the count, the state law error was harmless because there was no reasonable probability

4   that the jury would have determined that Martinez was guilty of only vehicular manslaughter and

5   not murder if the vehicular manslaughter count had been before the jury. *Id*. at *4.

6       Martinez cannot obtain federal habeas relief for the alleged error in the dismissal of the

7   vehicular manslaughter count. "In our criminal justice system, the Government retains broad

8   discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (internal

9   citations omitted). "[S]o long as the prosecutor has probable cause to believe that the accused

10  committed an offense defined by statute, the decision whether or not to prosecute, and what charge

11  to file or bring . . . generally rests entirely in his discretion." *Id.* (internal citations omitted). The

12  reason for this is because "the decision to prosecute is particularly ill-suited to judicial review."

13  *Id.* "Such factors as the strength of the case, the prosecution's general deterrence value, the

14  Government's enforcement priorities, and the case's relationship to the Government's overall

15  enforcement plan are not readily susceptible to the kind of analysis the courts are competent to

16  undertake." *Id.* The judicial deference to the prosecutor's charging decision "also stems from a

17  concern not to unnecessarily impair the performance of a core executive constitutional function."

18  *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Having the court review prosecution

19  decisions would delay case prosecutions and potentially "chill law enforcement" and potentially

20  "undermine prosecutorial effectiveness" through focusing on the prosecution's law enforcement

21  policies and procedures. *Id.*[1]

22      Here, Martinez's claim fails because there is no clearly established federal rule that

23  provides that a criminal defendant has a due process right to avoid dismissal of a count by the

24  prosecutor. The charging decision to dismiss the vehicular manslaughter count rested within the

25  discretion of the prosecutor. *See Wayte*, 470 U.S. at 607. The California Court of Appeal's

26

27      [1] Although not relevant to this action, the court retains authority to review charging

28  decisions when the claim is that there has been selective prosecution in violation of the Equal
    Protection Clause. *See Armstrong*, 517 U.S. at 464-65.

rejection of the claim was not "contrary to," or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Martinez is not entitled to the writ on this claim.

### 2. Lesser-Related and Lesser-Included Instructions

#### a. Background

Martinez argues that his right to due process was violated when the trial court failed to instruct on vehicular manslaughter, involuntary manslaughter, and voluntary manslaughter as lesser-related or lesser-included offenses.

The defense sought instructions on involuntary manslaughter and vehicular manslaughter, and the prosecutor opposed such instructions. The trial court determined that neither was a lesser included offense and declined to instruct on them. *Martinez*, at *6. The California Court of Appeal rejected Martinez's challenge to the trial court's ruling. The appellate court first explained that the failure to instruct was a state law error rather than a federal constitutional error, and therefore would be reviewed under the *Watson* standard for determining the harmlessness of state law error. *Id.* The appellate court did not need to "determine whether the trial court was obligated to instruct on involuntary manslaughter in this case because, for the very same reasons that the court's dismissal of the vehicular manslaughter count was not prejudicial, its failure to instruct on involuntary manslaughter could not have prejudiced defendant." *Id.* That reasoning is as follows:

> The undisputed evidence established that the death of Barajas was not the result of a simple failure to heed a red light. Defendant's entry into the intersection against the red light was the apex of a series of very dangerous driving maneuvers that defendant admittedly engaged in for the sole purpose of successfully escaping from the police before they realized that there was a warrant out for his arrest. He abruptly drove away from the traffic stop at high speed across three lanes of heavy traffic, skidded across a raised median, drove across three more lanes of heavy traffic, and maneuvered the Honda at high speed down a narrow bike lane past 20 or more stopped cars *before* entering the intersection. Although he may have slowed slightly just before entering the intersection, he was driving at close to 60 miles per hour at that point and knew that he was entering the intersection against a red light.
>
> Defendant did not dispute that his driving of the Honda in this manner was dangerous to human life. His defense was that he did not *consciously disregard* that danger at the time because he "wasn't thinking that day," "was blinded" by his desire to escape from the police, and "wasn't trying to hurt [any]body." The fact

that defendant did not intend to "hurt [any]body" was irrelevant. The mental component of implied malice murder requires only conscious disregard for the danger to human life, not intent to harm. "[S]econd degree murder based on implied malice has been committed when a person does ' " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'" ' [Citation.]" (*People v. Watson* (1981) 30 Cal.3d 290, 300 (*Watson* ).)

Defendant's own testimony rebutted his "wasn't thinking" and "blinded" claims. He testified that he *looked to see* whether cars were coming before he took off from the traffic stop. He *checked for bicycles* in the bike lane, pulled into the bike lane *to avoid the stopped cars, slowed down* as he got to the intersection, and "had a good view" before he entered the intersection. He also admitted that he proceeded into the intersection *knowing that the light was red* even though he could not see if there were cars or pedestrians in the intersection and that he chose to do that because he wanted to get away from the police. Defendant acknowledged that he purposely drove as fast as possible in order to ensure a successful escape. The evidence of defendant's prior conduct indisputably demonstrated that defendant knew of the risks that such driving entailed, and defendant admitted as much.

Defendant's own testimony established that he was not blinded and was thinking and making conscious choices based on the conditions that he was encountering throughout his execution of the series of dangerous driving maneuvers that led to Barajas's death. His conscious choices, to make a U-turn across a six-lane road in heavy traffic, to drive as fast as possible around stopped cars down a narrow bike lane and into an intersection against a red light, were all aimed at his calculated goal: a successful escape from the police. His conduct, as demonstrated by his own testimony, reflected a choice to make a pursuit by the police as difficult and dangerous as possible in order to deter it. Defendant's choices demonstrated that he was trying to avoid some risks while accepting others in order to attain his goal. No rational juror could have concluded that he was not conscious of the risk to human life that he created by driving the Honda down a bike lane, past several lanes of stopped traffic, at close to 60 miles per hour into a crowded intersection against a red light. It follows that it was not reasonably probable that the jury would have concluded that he was guilty of only vehicular manslaughter and not murder if it had been given that choice. The trial court's dismissal of the vehicular manslaughter count was not prejudicial.

*Martinez*, at *4-5.

### b. Analysis Of Federal Constitutional Claims

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *Id*.

Although instructions on lesser-included offenses must be given in capital cases, *Beck v. Alabama*, 447 U.S. 625 (1980), "[t]here is no settled rule of law on whether *Beck* applies to

1    noncapital cases such as the present one. In fact, this circuit, without specifically addressing the

2    issue of extending *Beck*, has declined to find constitutional error arising from the failure to instruct

3    on a lesser included offense in a noncapital case." *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir.

4    1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en

5    banc). The failure of a state trial court to instruct on lesser-included offenses in a non-capital case

6    does not present a federal constitutional claim. *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000);

7    *see also Windham v. Merkle*, 163 F.3d 1092, 1105-06 (9th Cir. 1998).

8         Under Ninth Circuit precedent, "the defendant's right to adequate jury instructions on his

9    or her theory of the case might, in some cases, constitute an exception to the general rule." *Solis*,

10   219 F.3d at 929 (citing *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984). *Solis* suggests that

11   there must be substantial evidence to warrant the instruction on the lesser included offense. *Solis*,

12   219 F.3d at 929-30 (no duty to instruct on voluntary manslaughter as lesser included offense to

13   murder because evidence presented at trial precluded a heat of passion or imperfect self-defense

14   instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial

15   implied malice).

16

17                        i.   Refusal To Give Vehicular Manslaughter Instruction

18        Martinez's claim fails because there is no clearly established federal rule that a trial court

19   must instruct on all lesser-related and lesser-included offenses. Martinez was charged with

20   murder, and the jury was instructed on murder. Martinez had no due process right to instructions

21   on vehicular manslaughter as a lesser-related or lesser-included offense. The California Court of

22   Appeal's decision that the federal constitution did not require a lesser-included or lesser-related

23   offense instruction was consistent with *Beck v. Alabama,* 447 U.S. 625. The California Court of

24   Appeal's rejection of the claim was not "contrary to," or "an unreasonable application of, clearly

25   established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

26   2254(d). Martinez is not entitled to the writ on this claim.

27

28

The argument that the failure to instruct on vehicular manslaughter violated Martinez's right to present a defense also fails. Notwithstanding the Ninth Circuit's statements that a defendant's right to present a defense sometimes might warrant an instruction on a lesser-included offense, the Supreme Court has never so held. "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' § 2254(d)(1)." *Glebe v. Frost*, 135 S. Ct. 429, 431 (2014). Without such a Supreme Court holding, the California Court of Appeal's rejection of the claim that the failure to instruct on the lesser offense violated Martinez's right to present a defense cannot be said to be "contrary to" or involve "an unreasonable application of clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

Even if there were such clearly established federal law from the Supreme Court, the error was harmless. The habeas court must apply the harmless-error test set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and determine whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) (quoting *Brecht*, 507 U.S. at 623). Any violation of the right to present a defense based on the omission of the instruction was harmless under the *Brecht* standard.[2] Martinez engaged in a series of highly dangerous driving maneuvers for the purpose of escaping from the police. These were not just maneuvers that resulted in the police not following him, they were done for the purpose of making sure the police would not follow him. *See* RT 3886-87,

---

[2] On direct appeal, California courts evaluate a constitutional error to determine whether it was "harmless beyond a reasonable doubt," *Chapman v California*, 386 U.S. 18, 24 (1967), but evaluate a non-constitutional error to determine if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error," *People v. Watson,* 46 Cal.2d 818, 836 (Cal. 1956). *Hall v. Haws*, 861 F.3d 977, 989 n.7 (9th Cir. 2017). This court considers the question of the harmlessness of the error *de novo*, and without deference to the California Court of Appeal's harmless error analysis on this claim because that court applied the standard from *Watson*, rather than the standard from *Chapman*. *See Martinez*, at *4 (citing *Watson*, 46 Cal. 2d at 836-37).

3899.  The maneuvers included driving quickly away from the traffic stop across three lanes of heavy traffic, skidding across a raised median, driving across three more lanes of heavy traffic, driving into the bike lane past 20 or more cars stopped for the light and entering the intersection against a red light at close to 60 miles per hour.  Not only were these maneuvers dangerous on their face, Martinez's testimony about his thinking showed he knew that his conduct endangered the life of another and acted with conscious disregard for life.  Martinez did testify that he "wasn't thinking" and was "blinded" as to the dangers, see RT 3895, but this testimony was not credible given that he also testified to the steps he took supposedly to ensure everyone's safety: e.g., he looked before pulling away from the police and driving across multiple lanes of traffic and reversing direction, he slowed down because there were cars stopped at the intersection, he moved over to avoid rear-ending the stopped cars, he checked for bikes before driving into the bike lane, and he had to maneuver around stopped cars to enter the intersection against a light he knew was red.  RT 3886-95; *see also* footnote 7, *infra*.  With or without a vehicular manslaughter instruction, the jury would have found Martinez guilty of murder.  The absence of a jury instruction on vehicular manslaughter did not have a substantial and injurious effect in determining the jury's verdict.

ii.     Refusal To Give Involuntary Manslaughter Instruction

Martinez urges that his right to due process was violated when the trial court failed to instruct on involuntary manslaughter as a lesser-related or lesser-included offense.  This claim is meritless because California law explicitly excludes driving-caused deaths from the category of crimes that are involuntary manslaughters.  California Penal Code § 192(b) provides that the crime of involuntary manslaughter "shall not apply to acts committed in the driving of a vehicle."  *See Martinez,* at *6 n.6.

### iii.  Refusal To Instruct On Voluntary Manslaughter

Martinez argues that his right to due process was violated when the trial court failed to instruct on voluntary manslaughter based on provocation/heat of passion as a lesser-related or lesser-included offense.  The California Court of Appeal rejected Martinez's claim because there was not adequate evidentiary support for the instruction:

> "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "A criminal defendant is entitled to an instruction on a lesser included offense only if [citation] 'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*." (*People v. Memro* (1995) 11 Cal.4th 786, 871, overruled on a different point in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)

> "Where an intentional and unlawful killing occurs 'upon a sudden quarrel or heat of passion' (§ 192, subd. (a)), the malice aforethought required for murder is negated, and the offense is reduced to voluntary manslaughter—a lesser included offense of murder. [Citation.] Such heat of passion exists only where 'the killer's reason was actually obscured as the result of a strong passion aroused by a "provocation" sufficient to cause an " 'ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.' " ' [Citation.] To satisfy this test, the victim must taunt the defendant or otherwise initiate the provocation. [Citations.]" (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) "To be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection . . . . [T]he anger or other passion must be so strong that the defendant's reaction bypassed his thought process to such an extent that judgment could not and did not intervene." (*People v. Beltran* (2013) 56 Cal.4th 935, 949.)

> Heat of passion instructions were not merited in this case because there was not substantial evidence that Barajas's crying would have caused "an ordinary person" to experience "an emotion so intense" that he or she would be unable to think and exercise judgment and would instead react without reflection. Witnessing another person crying is the kind of ordinary experience that may be painful but does not cause an *ordinary person* to lose the ability to think and reflect before acting. (*Beltran*, *supra*, 56 Cal.4th at p. 950.) Since the evidence could not support the objective element of heat of passion, instructions on that theory were not required, and the court did not err in failing to give such instructions.

*Martinez*, at *9.

Martinez's federal habeas claim fails because there is no clearly established federal rule that a trial court must instruct on all lesser-related and lesser-included offenses.  Martinez was charged with murder, and the jury was instructed on murder.  Martinez had no due process right to

instructions on voluntary manslaughter as a lesser-related or lesser-included offense. The California Court of Appeal determined, as a matter of state law, that the evidence presented at trial did not support an instruction on voluntary manslaughter. *Martinez*, at \*4-6, & \*9. This was a determination that the evidence did not support the objective component of heat of passion, i.e., that the event (seeing his girlfriend crying because he once again would be going into custody) would not cause an ordinary person of average disposition to act rashly or without due deliberation. *See Moye*, 47 Cal. 4th at 550. The state court's finding that the evidence did not support a voluntary manslaughter instruction is entitled to a presumption of correctness on federal habeas review. *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). Martinez has not overcome that presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). The California Court of Appeal's rejection of the claim was not "contrary to," or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Martinez is not entitled to the writ on this claim.

### 3. Limitation on Closing Argument

Martinez argues that his due process right to present a defense was violated when the trial court limited defense counsel's closing argument. The limitations precluded the defense from making argument to the jury about the uncharged lesser offenses.

#### a. Background

Defense counsel sought permission to argue to the jury that defendant was guilty of vehicular and involuntary manslaughter rather than murder, even though the jury would not be instructed on the lesser offenses. Defense counsel also asked for a modification of CALCRIM No. 520 to delete a reference to "express malice" because express malice was not at issue in this case. The prosecutor wanted no mention of charges not before the jury. The court provisionally granted the prosecutor's request pending briefing on the issue. *Martinez*, at \*6. These issues were raised again at the jury instruction conference and the trial court made further rulings. The trial court

ruled that defense counsel could not argue that vehicular manslaughter at one time had been charged or discuss the elements of the crime of manslaughter. *Martinez*, at \*6. The court also rejected defense counsel's plan to argue to the jury "'that this is not only not the crime of murder, but that this is something else that they're not allowed to consider because the choice was not given to them. That choice was made by the prosecution.'" *Id.* at 7.

> The prosecutor argued to the jury, without objection, that the jury was not required to find that defendant had engaged in a "weighing procedure. That's called first degree wilful [sic ] premeditated and deliberate murder. That is not what is at issue here." Defendant's trial counsel began her closing argument by arguing: "It's not murder. It's many, many things but it's not murder." "The question that is really before you, ladies and gentlemen, is what to label [this case], what to call it. My purpose . . . is to tell you it is not the label of murder. [¶] So the argument basically will focus on the creation of what to call the act . . . . The issue is do you think this is . . . murder, . . . , or whether or not you think it is manslaughter." "You want to assign some culpability. Renan, this is your fault, but it's not murder. I'm not going to stand here and tell [you] he's not guilty. He's absolutely guilty; just not of murder." "If Renan didn't think about what he was doing, if all he thought is I can just get away, I don't know what to call it other than an accident, but it's not murder, right?" "Not all killings are murder, but Renan bears one hundred percent the responsibility for Mayra's death, but, you know, not all homicides when we kill one another, it's not always murder. It's not. This is an accident for which Renan bears complete responsibility." "It's not murder. It's an accident that is one hundred percent Renan's responsibility. I'm not here to tell you that Renan is not at fault, but I can't give you a label of what to call it. By not being able to give you a label of what to call his responsibility, you can't default to the label of murder if you don't believe that's there either." She suggested that the jury find that "it was something but it wasn't murder." The prosecutor responded in his rebuttal: "You can call it by any other name if that makes you feel better, but the law says that it's murder, and that's all you are here to decide."

*Martinez*, at \*7.

The California Court of Appeal rejected Martinez's claim that the trial court improperly limited closing argument, finding that the trial court did not abuse its "broad discretion":

> The federal constitutional right to counsel includes a right to have counsel present closing argument. (*Herring v. New York* (1975) 422 U.S. 853, 860 (*Herring* ).) However, "[t]his is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He [or she] may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He [or she] *may ensure that argument does not stray unduly from the mark*, or otherwise impede the fair and orderly conduct of the trial. In all these respects he [or she] must have broad discretion." (*Herring*, at p. 862, italics added.) California law is in accord. "It shall be the duty of the judge to control all proceedings during the trial, and *to limit* the introduction of evidence and *the argument of counsel to relevant and material*

*matters*, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (footnote omitted) (§ 1044, italics added.)

The trial court did not abuse its "broad discretion" in precluding defendant's trial counsel from arguing to the jury that defendant was guilty of a crime that was not before the jury. Such an argument would have been irrelevant and confusing to the jury since it was not instructed on any other crimes or given the option to convict defendant of anything other than murder. The trial court's order that defendant's trial counsel not refer to the dismissal of the vehicular manslaughter count was also well within its discretion. The prosecutor's charging decisions were not material to the issues before the jury.

Furthermore, since we have already concluded that it was not reasonably probable that the jury would have convicted defendant of anything less than murder even if lesser offenses had been before the jury, the trial court's limitations on defendant's trial counsel's argument could not have prejudiced him. There is not a reasonable probability that argument by defendant's trial counsel that defendant was guilty of a lesser offense would have produced an outcome more favorable to defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

*Martinez*, at *8.

b.    Analysis

Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth or Fourteenth Amendment guarantee of due process, "'the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683 690 (1986)); *see also Trombetta*, 467 U.S. at 485 (due process); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (compulsory process).  With regard to closing argument, "closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial."  *Herring v. New York*, 422 U.S. 853, 858 (1975).  The preclusion of closing argument in a criminal defense trial violates the defendant's constitutional rights to counsel and to present a defense, *id.* at 858, 862-63, and constitutes structural constitutional error, *id.* at 864-65.   *See also Bell v. Cone*, 535 U.S. 685, 696 n.3 (2002) (recognizing that *Herring* did not recognize a showing of prejudice). "[T]here can be no justification for [a trial court] to deny absolutely . . . any closing summation at all."  *Herring*, 422 U.S. at 863.  "This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained."  *Id.* at 862.  The trial court "is given great latitude in controlling the duration and limiting the scope of closing summations."  *Id*.  The trial court may

limit the amount of time and end the argument "when continuation would be repetitive or redundant." *Id.* The trial court "may ensure that argument does not stray unduly from the mark[.]" *Id.*

In *Glebe v. Frost*, the United States Supreme Court clarified that *Herring* held only that the complete denial of summation amounts to structural error. 135 S. Ct. 429, 431-32 (2014) (per curiam). In *Glebe v. Frost*, the petitioner had two legitimate defenses to criminal charges, but the trial court only permitted counsel to argue one theory in closing. *Id.* at 430. Glebe held that a harmless error standard should be applied when the trial court limits the scope of closing argument. *Id. See also Lunbery v. Hornbeam*, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993))(applying the harmless error standard and holding that a violation of the right to present a defense merits habeas relief only if the error was likely to have had a substantial and injurious effect on the verdict).

Here, the California Court of Appeal's rejection of Martinez's constitutional claim was not an unreasonable application of, or contrary to, *Herring*. There was not a complete denial of closing argument. The trial court limited defense counsel from arguing Martinez's crime was vehicular manslaughter or a crime that was not before the jury for a decision. However, defense counsel was free to argue, and did argue, that the evidence was insufficient for a second degree murder conviction. Not permitting the defense to argue vehicular manslaughter was a reasonable limitation because that crime was not before the jury for a decision. The state appellate court reasonably determined that the jury would have been confused by argument about an uncharged crime and that would have been a distraction to a jury deciding only whether Martinez was guilty of the murder for which he had been charged. The California Court of Appeal's rejection of the claim was not "contrary to," or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Martinez is not entitled to the writ on this claim.

C.     Voluntary Manslaughter Instruction's Impact On Burden Of Proof (Claim 2)

Martinez argues that the trial court's refusal to instruct on voluntary manslaughter violated his federal constitutional right to proof of every element of murder beyond a reasonable doubt.  He argues that, without the instruction, the State was not required to prove the absence of heat of passion as an element of murder.  *See* Docket No. 1 at 13.  He relies mainly on *Mullaney v. Wilbur*, 421 U.S. 684 (1975), but that case does not support the weight he puts on it.

*Mullaney* concerned a state rule that required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation.  *Id*. at 703.  In accord with the Maine rule at issue in *Mullaney*, the jury was instructed "that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation."  *Id*. at 686.  This rule violated due process.  *Id*. at 703.  The Supreme Court explained that it was intolerable that under this allocation of the burden of proof the defendant could receive a life sentence for murder "when the evidence indicates that it is as likely as not that he deserves a significantly lesser sentence."  *Id*.  Of key importance here is the Court's holding that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation *when the issue is properly presented* in a homicide case."  *Id*. at 704 (emphasis added).

The California Court of Appeal's rejection of Martinez's claim was not contrary to, or an unreasonable application of, *Mullaney*.  Unlike the Maine rule at issue in *Mullaney*, California does not require the defendant to shoulder the burden of proof on the existence of provocation/heat of passion.  Unlike *Mullaney*, Martinez's jury was not instructed that Martinez had to prove that he acted in the heat of passion or that without such proof, malice aforethought would be conclusively implied from an intentional killing.  *See* CT 690 (CALCRIM No. 220 (reasonable doubt instruction)) and CT 707 (CALCRIM No. 520 (second degree murder instruction)).  Unlike *Mullaney*, there was no genuine possibility that Martinez was convicted of murder when the evidence indicated that it was as likely as not that he deserved a conviction of voluntary manslaughter.  *Cf. Mullaney*, 421 U.S. at 703.  Most importantly, *Mullaney* imposed the duty to

19

prove the absence of heat of passion "when the issue is properly presented." 421 U.S. at 704. It would not have been unreasonable for the California Court of Appeal to determine that *Mullaney* did not apply to Martinez's case due to the lack of evidentiary support for a voluntary manslaughter instruction. As mentioned earlier, the California Court of Appeal determined that a voluntary manslaughter instruction was not necessary based on the evidence at trial. The state court's finding that the evidence did not support a voluntary manslaughter instruction is entitled to a presumption of correctness on federal habeas review. *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). Martinez has not overcome that presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Martinez is not entitled to the writ on this claim.

D.     *Wardius* Due Process Claim (Claim 3)

Martinez contends that it was unfair for the trial court to grant the prosecution's request for instructions on the uncharged mental state of express malice while at the same time denying the defense request for instructions on manslaughter. Docket No. 1 at 2-3, 10, 15. According to Martinez, "the plainly disparate treatment of defense and prosecution requests for argument and instruction on uncharged mental states[] is a plain violation of the Due Process principle of fair play and the balance of forces between an accused and accuser." *Id*. at 3. He relies on a phrase from *Wardius v. Oregon*, 412 U.S. 470, 474 (1973), in which the Court observed that the Due Process Clause "does speak to the balance of forces between the accused and his accuser." Docket No. 1 at 15.

*Wardius* is of no help to Martinez. In *Wardius*, the issue was whether the defendant's right to due process was violated by a state law that required defendants to provide advance notice of alibi, but provided no discovery rights to criminal defendants on the alibi question. The holding in *Wardius* was that the Due Process Clause "forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." 412 U.S. at 472. *Wardius'* ruling -- requiring reciprocal discovery for information regarding an alibi -- does not clearly establish or even naturally lead to absolute impartiality in jury instructions as a constitutional right. Another Supreme Court case, *Reagan v. United States*, 157 U.S. 301, 310 (1895), at least states that jury

20

instructions should be impartial, but concerns whether a defendant's testimony may be singled out as less believable because he is a defendant. Neither *Wardius* nor *Reagan* addressed the perceived inequity in failing to give a lesser-included or lesser-related offense instruction while allowing a pattern instruction on the charged offense that mentions a theory (express malice) not at issue but helpful to understanding a mental state (implied malice) at issue in the case.

Martinez's other cited cases stand for the general proposition that a state rule that works to the detriment of only the defendants may violate due process. *See, e.g., Green v. Georgia*, 442 U.S. 95 (1979) (relying on hearsay rule to exclude evidence that a codefendant confessed violated due process because the evidence was highly relevant to the critical issue in the punishment phase of a death penalty case and substantial reasons existed to assume it was reliable, i.e., statement was spontaneously made, was corroborated by other evidence, was made against interest, and had been considered sufficiently reliable for the State to use it to sentence the declarant to death); *Webb v. Texas*, 409 U.S. 95 (1972) ("judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process"); *Washington v. Texas*, 388 U.S. 14 (1967) (State violated Sixth Amendment right to compulsory process with rule that made all defense testimony from coparticipants inadmissible as a matter of procedural law while allowing the same witnesses to testify in favor of the prosecution). Unlike the situation in these cases, Martinez has not shown that there was a state rule in place that worked only to the detriment of the defense in his case by rejecting defense evidence that would have been allowed if offered by the prosecution.

Martinez's suggestion that the jury instructions were biased in favor of the prosecution also is factually incorrect. Contrary to Martinez's suggestion to this court, *see* Docket No. 1 at 5, the jury was not instructed on first degree murder. Also contrary to his suggestion to this court, *see id.*, express malice is not the hallmark of first degree murder. The jury instructions given created absolutely no likelihood of a first degree murder conviction.

The inclusion of a sentence about express malice also did not increase in any way the possibility that the jury would convict Martinez of second degree murder. The express malice sentence was a correct statement of the law and allowed the jury a better understanding of the

concept of implied malice (by contrasting express and implied malice), and allowed both the prosecutor and defense counsel to explain that this was not a case about express malice. *See* RT 4055, 5263, 4266. The pattern second degree murder instruction used at Martinez's trial mentions express and implied malice, and a finding of either can lead to a second degree murder conviction. CT 707 (CALCRIM No. 520).[3] The instruction given provided no advantage to the prosecutor in terms of being able to convict Martinez of a greater offense.

_____

[3] CALCRIM No. 520 provides:

The defendant is charged in Count 1 with murder in violation of Penal Code section 187.

To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [AND] [¶] 2. When the defendant acted, he had a state of mind called malice aforethought.

There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.

The defendant acted with express malice if he unlawfully intended to kill.

The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; AND [¶] 4. He deliberately acted with conscious disregard for human life.

Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time.

An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death.

If you find the defendant guilty of murder, it is murder of the second degree.

Martinez argues that allowing the express malice language while refusing the manslaughter instructions was imbalanced. But the refusal to instruct on a defense theory for which there was not substantial evidence did not show an impermissible bias against the defense or otherwise violate Martinez's right to due process. As explained earlier, due process does not give a criminal defendant a constitutional right to instructions on lesser-included or lesser-related offenses.

The California Court of Appeal's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court. Martinez is not entitled to the writ on this claim.

E.      Ineffective Assistance of Counsel (Claim 4)

Martinez argues that he received ineffective assistance of counsel in connection with a plea offer that he rejected. The reasoning in support of the claim is unusually roundabout. Martinez offers not a word about what client or counsel actually said, and instead tries to show ineffective assistance by relying on what the California Court of Appeal wrote about something the prosecutor wrote. Martinez's reasoning is faulty, and fails to establish ineffective assistance of counsel.

1.      Background

In late April 2012, the prosecutor offered a plea deal to Martinez: in exchange for Martinez pleading guilty to vehicular manslaughter and assault with a deadly weapon and admitting all remaining allegations charged in the information, Martinez would receive a "15 year top/bottom sentence. The offer was rejected by the defendant the next day." Docket No. 12-5 at 79. There is no information in the record about the discussions between defense counsel and Martinez that led to the rejection of the offer.

Four months later, on August 29, 2012, the prosecutor filed the "People's Trial Memorandum and Motions In Limine." Docket No. 12-5 at 77. In a section labeled "status of plea discussions," the trial brief described the above-mentioned plea offer and rejection and then stated:

23

> *The People feel that if counsel recommended against acceptance of the offer, the advice was reasonable given the risks at trial of getting 12 jurors to agree that the facts of this case are murder.* The People would not have considered any other set of charges with the exception of a murder charge or the offer given. However, given that there is new evidence in the form of GPS data showing defendant was driving as fast as 66 mph as he entered the intersection, the People would not have accepted any plea short of murder.

*Id.* at 79-80 (emphasis added). The prosecutor also noted that defense counsel had indicated on May 29, 2012, that the defendant was not interested in the now-revoked offer and wanted to go to trial. *Id.* at 80.

On direct appeal, Martinez argued that the prosecutor's trial brief had conceded the weakness of the State's case. The California Court of Appeal handled the defense argument thusly:

> Defendant also claims that the court's dismissal of the vehicular manslaughter count was necessarily prejudicial because "the trial prosecutor himself recognized that the evidence of malice was so weak and equivocal that it would be difficult to convince twelve jurors to unanimously vote to convict [defendant] of murder." His sole citation in support of this claim is to one page of the prosecutor's trial brief, on which the prosecutor acknowledged that defendant's April 2012 rejection of a plea offer was reasonable "given the risks at trial of getting 12 jurors to agree that the facts of this case are murder." Right after saying this, the prosecutor noted that he had obtained "new evidence" after the plea offer that solidified his position that the offense was murder. Furthermore, we do not evaluate this case based on what the prosecutor thought of his case prior to trial. He could not have anticipated that defendant's trial testimony would provide such strong support for his case. We review all of the evidence presented at trial in determining whether it is reasonably probable that the jury would have rejected the murder count if the vehicular manslaughter count had also been before it.

*Martinez*, at *4.

Martinez interprets this passage from the California Court of Appeal opinion as a finding "that the prosecutor's words were not a concession of the weakness of the evidence and were essentially meaningless and irrelevant to the court's assessment of the strength of the evidence." Docket No. 1 at 16. This, contends Martinez, was "baffling" because the Attorney General "did not contend that the prosecutor's statements were meaningless, false or otherwise irrelevant." *Id.* Martinez further urges that, assuming that the state appellate "court was right that the prosecutor's assurances to the trial court that there was a reasonable probability of an acquittal or hung jury on the murder charge were false or meaningless, then petitioner's decision to refuse a plea offer for a

lesser charge was clearly not knowingly and intelligently made, and any advice from counsel that there was a reasonable probability of acquittal was unsound." *Id*.

### 2. Analysis

The Sixth Amendment's right to counsel guarantees not only assistance, but effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*. In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

A "doubly deferential" judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011). The "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To prove ineffective assistance of counsel at the plea bargaining stage, the analysis under *Strickland* is based on "counsel's judgment and perspective when the plea was negotiated, offered and entered," not on a post-adjudication assessment of the case. *Premo v. Moore*, 562 U.S. 115, 126 (2011). To prove prejudice under the second prong of *Strickland* in the context of a rejected plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's

terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Applying these principles, this court concludes that the California Supreme Court's summary rejection of Martinez's claim was not an unreasonable application of, or contrary to, clearly established Supreme Court precedent.[4] Martinez's claim falters on both *Strickland* prongs. He fails to show that counsel engaged in deficient performance with respect to the plea offer since he provides no evidence at all as to what counsel's advice actually was. There might have been sound reasons to recommend against taking the plea offer, or Martinez may have rejected the plea offer against the advice of counsel. Martinez also fails to show that, but for the deficient advice of counsel, there is a reasonable probability that he would have accepted the plea, the prosecution would not have withdrawn it in light of intervening circumstances, and the trial court would have accepted its terms.

Even if it was permissible to show ineffective assistance with nary a word about counsel's actual statements regarding a plea offer, Martinez's reliance on the statement of the prosecution and the California Court of Appeal to prove that his own attorney was ineffective fails because he severely misreads their statements. First and foremost, the prosecutor's statement in his trial brief was not a concession of any weakness in his case as a matter of law, but much more likely was an acknowledgment that this type of murder could be conceptually difficult to get a jury to understand. Although jurors easily can grasp a death resulting from a shooting or stabbing is a murder, they might be slower to accept that a death resulting from a car crash can be a murder -- especially when the victim is a passenger in the defendant's car and is someone for whom the

---

[4] Respondent argues that state court remedies have not been exhausted for the claim. The Court disagrees. The ineffective-assistance-of-counsel claim is buried in another argument at page 22 of Martinez's petition for review. *See* Docket No. 12-22. The argument does not mention the Sixth Amendment or *Strickland*, but does mention the two significant Supreme Court cases on ineffective assistance of counsel in the plea-bargaining context, *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012). Although putting an argument for relief on one theory in the argument for an entirely different claim is not wise advocacy, it does satisfy the exhaustion requirement. Additionally, the California Supreme Court "normally will not consider an issue that the petitioner failed to timely raise in the Court of Appeal," Cal. Rule of Court 8.500(b)(1), but does not prohibit parties from raising issues this way. Martinez's decision to first raise the ineffective-assistance claim in a discretionary petition for review was not likely to lead to relief in the California Supreme Court, but did satisfy the exhaustion requirement.

defendant had affection. The prosecutor's statement appears to have recognized the hurdle of getting a jury to accept in principle that a death that results from certain dangerous driving can be a murder, much like the hurdle of getting a jury to understand drunk driving with a fatality can be a murder or to understand the felony murder rule. *See generally* RT 4239 (prosecutor's closing argument mentions that this murder is different than the type of murder jurors normally envision). The prosecutor did not say or intimate that the evidence of malice was weak. Moreover, the prosecution's case for murder had strengthened between the rejection of the plea and the filing of the trial brief four months later: proof had been obtained that Martinez was travelling about 66 miles per hour when he drove into the intersection against a red light -- providing stronger evidence of conscious disregard for human life.

Second, far from being "baffling," the California Court of Appeal's statement correctly reflected the appellate court's role on appeal. At the place it made the statement that Martinez has seized upon, the California Court of Appeal was discussing whether the failure to instruct was harmless error. *Martinez*, at *4. Martinez does not show that an appellate court is supposed to set aside the normal approach to determining whether an instructional error is harmless error and instead adopt the views of the prosecution to resolve the claim. Regardless of what the prosecution writes about its case before trial -- whether it be an acknowledgment of difficulties or the more typical assertion that the evidence of guilt is overwhelming -- the California Court of Appeal must apply controlling law to the evidence actually presented at trial. Not only was it correct to set aside the prosecutor's view of things, the prosecutor's view of things was not particularly rosy for the defense, as the California Court of Appeal pointed out: the prosecutor's statement about the perceived difficulty of getting 12 jurors to agree that the facts amounted to murder had been accompanied by the prosecutor's statement that the case for murder had been strengthened by new data showing that Martinez ran the red light at 66 miles per hour immediately before the crash. Also, as the California Court of Appeal explained, a lot of damage to the defense was done by Martinez's own trial testimony, which would not have been known to the prosecutor at the time he wrote the trial brief mentioning the perceived difficulty of getting 12 jurors to agree that the facts amounted to murder. The defense argument based on the prosecution's statements

made more than four months before trial was of little value to the California Court of Appeal in analyzing the instructional error claim both because the prosecutor's view does not set the standard of review and because reviewing courts, unlike many jurors, are well-acquainted with the fact that a murder weapon can be something other than a gun or a knife.

Third, Martinez's argument that the "prosecutor induced Petitioner to rely upon those statements, reject the plea offer and proceed to trial" has the timing wrong. Docket No. 18 at 29. The prosecutor's statement in his trial brief was made four months after the plea was rejected; the statement was made at a time when the original offer had been revoked and when the prosecutor was unwilling to accept anything other than a plea to murder. CT 499-500. Likewise, Martinez's argument that the prosecutor "induced the state court to approve the rejection of the plea without further inquiry into counsel's advice, and proceed to trial" is imaginary. Docket No. 18 at 29. He does not show that the prosecutor requested that the trial court approve a plea rejection, or that the trial court had any duty to approve a plea rejection.

In sum, ineffective assistance of counsel has not been shown by Martinez's references to the statements of the prosecution and the appellate court. He is not entitled to the writ on this claim.

F.      *Bouie* Claim (Claim 5)

Martinez argues that, because he was entitled to instructions on manslaughter the state courts could not apply a narrower definition of manslaughter retroactively to him. He relies on *Bouie v. City of Columbia*, 378 U.S. 347 (1964), for the principle that a state may not retroactively expand the reach of a criminal statute. He then argues that, because California "has a long history of requiring courts to instruct on manslaughter as a lesser included offense of murder," the state court's holding that no heat of passion or manslaughter instructions were warranted was unreasonable and contrary to Supreme Court precedent. Docket No. 1 at 17-18. He further argues that the state court "radically constricted the application of heat of passion in this case." Docket No. 18 at 32.

The California Court of Appeal did not discuss the *Bouie* claim. Indeed, Martinez's argument is essentially that the appellate court's analysis amounted to a violation of the principle in *Bouie*.

A federal habeas court generally will not revisit a determination of state law by the state appellate court. *Hicks v. Feiock*, 485 U.S. 624, 629 (1988) (court is not free to review state court's determination of state law); *cf. id*. at 630 n.3 (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237-38 (1940) (determination of state law made by an intermediate appellate court must be followed and may not be "'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise'")). Review of the state court's application of state law is not completely off-limits to the federal habeas court, however. Room remains under the Due Process Clause to remedy certain retroactive enlargement of the reach of a criminal statute by state judicial interpretation. *Mendez v. Small*, 298 F.3d 1154, 1158-59 (9th Cir. 2002). "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." *Bouie*, 378 U.S. at 354 (citation omitted). The rationale of *Bouie* and its progeny rests on the core due process concepts of notice, foreseeability, and the right to fair warning of criminal penalties. *Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (judicial decision abolishing common law year-and-a-day rule – that no defendant could be convicted of murder unless victim died within a year and a day after defendant's act – was not unexpected and indefensible and therefore did not violate due process). The *Bouie* rule against judicial expansion of a statute is not an identical twin to the *ex post facto* rule against retroactive application of legislative changes expanding criminal laws. *Rogers*, 532 U.S. at 458-61. There is an incremental and reasoned development of precedent in the common law that "presupposes a measure of evolution that is incompatible with stringent application of *ex post facto* principles. It was on account of concerns such as these that *Bouie* restricted due process limitations on the retroactive application of judicial interpretations of criminal statutes to those that are 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers*, 531 U.S. at 461.

Under California law, the state of the evidence determines whether the jury must be instructed on a lesser-included offense. "[T]he existence of 'any evidence, no matter how weak,' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]'" that the lesser offense, but not the greater, was committed." *People v. Breverman*, 19 Cal. 4th 142, 162 (Cal. 1998). There is no need to instruct on heat of passion or imperfect self-defense "when the evidence is 'minimal and insubstantial.'" *People v. Barton*, 12 Cal.4th 186, 201 (Cal. 1995).

In California, the crime of voluntary manslaughter is a lesser included offense of the crime of murder. *People v. Beltran*, 56 Cal. 4th 935, 942 (Cal. 2013). "Voluntary manslaughter based on a heat-of-passion theory has both a subjective and an objective component. *People v. Cole*, 33 Cal. 4th 1158, 1215–16 (Cal. 2004). For the subjective component, the defendant must actually, subjectively, kill the victim in the heat of passion, that is, anger, rage, or any violent, intense, high-wrought or enthusiastic emotion, except revenge. *People v. Lasko*, 23 Cal. 4th 101, 108 (Cal. 2000). The objective component requires that the defendant's passion have an objectively reasonable basis. *Id.* That is, there must be evidence that the victim provoked the defendant, and that provocation must be sufficient to cause an "ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than judgment." *Id.* (citations and internal quotation marks omitted). The provocation need not be such that it would prompt an ordinary person of average disposition to kill someone, but only that it "would render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'" *Beltran*, 56 Cal. 4th at 957 (quoting *People v. Logan*, 175 Cal. 45, 49 (Cal. 1917)).

Far from being some outlandish constriction of the law of heat of passion, the California Court of Appeal's rejection of Martinez's heat-of-passion instructional error claim was a routine application of the state law on heat of passion. The California Court of Appeal found that the evidence of heat of passion was not substantial enough to support the giving of the instruction, and

upheld the refusal to instruct on that basis. California courts have long required that there be substantial evidence to support the giving of a lesser-included offense instruction. *See Breverman*, 19 Cal. 4th at 162. Here, the state appellate court determined that there was not substantial evidence.

The determination that manslaughter instructions were not necessary in Martinez's case was not unexpected and indefensible by reference to the then-existing law. Long before Martinez crashed his car, California Supreme Court cases explained that both the objective and subjective prongs had to be present for a killing to be heat-of-passion voluntary manslaughter. The objective prong required that the provocation by the victim had to be such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. *Lasko,* 23 Cal. 4th at 108. And the California Supreme Court had long held that there had to be substantial evidence of heat of passion in order for there to be a duty to instruct. The California court's review of Martinez's case did not unexpectedly depart from the California Supreme Court precedent and was not an unexpected interpretation of the law of manslaughter. The California Court of Appeal explained that the evidence that Martinez saw that Mayra cried, apparently because she knew that they would become separated because Martinez was going into custody if arrested by the police, did not provide substantial evidence to warrant an instruction on manslaughter. *See Beltran*, 56 Cal. 4th at 957 (provocation must be such that it "would render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment"). The California Court of Appeal's decision was not an unexpected and indefensible application of the law of manslaughter, either with reference to the actual wording of the statute or with reference to existing case law. The appellate court's application of the law of manslaughter did not violate Martinez's due process rights. His *Bouie* claim fails.

G.    Prior Acts Evidence (Claim 6)

Martinez claims that the admission of certain prior acts evidence violated his federal constitutional rights because it was propensity evidence, and the trial court gave incomplete limiting instructions. Docket No. 1 at 18. He further argues that the error was prejudicial to him.

1

2     1.     State Court Proceedings

3       Martinez had a lengthy history of bad driving and unfavorable encounters with the police.

4  The defense filed a motion in limine to exclude this evidence under California Evidence Code

5  § 352 and § 1101(a), as well as the Due Process Clause, because it was inadmissible character

6  evidence that would be used to show propensity.  At a hearing, the trial court weighed the

7  admissibility of each item under California Evidence Code § 352 and determined that most of the

8  prior acts were admissible under California Evidence Code § 1101(b) to show Martinez's

9  knowledge of the risk of death, his motive, and his intent.[5]

10      Evidence was thus introduced during trial of prior acts by Martinez as proof of his

11 knowledge that driving as he did on the day of the crash was dangerous to human life and as proof

12 of his motive and his intent to avoid being captured by the police when he fled on the day of the

13 crash.  The trial court preinstructed the jury at the beginning of trial that some evidence would be

14 admitted for a limited purpose.  When the jury began receiving testimony about the prior acts, the

15 trial court again instructed the jury that the evidence about events other than those on June 9 was

16 coming in for the limited purpose of its effect on the defendant's mental state, and not to show that

17 defendant was a bad person or of bad character.  In the middle of the testimony about the prior

18 acts, the court again instructed the jury on the limited purpose of the prior acts evidence.  The trial

19 court's final instructions to the jury included instructions that the evidence could only be used with

20 regard to Martinez's "mental state," and that the evidence was "not to be used [as proof] that the

21 defendant is a bad person or of bad character."  The jury also was instructed: "Do not consider

22 _____

23       [5] California Evidence Code § 352 is the state analog of Federal Rule of Evidence 403, and
    provides:  "The court in its discretion may exclude evidence if its probative value is substantially
24 outweighed by the probability that its admission will (a) necessitate undue consumption of time or
    (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the
25 jury."
          California Evidence Code § 1101(a) provides the general rule that "evidence of a person's
26 character or a trait of his or her character (whether in the form of an opinion, evidence of
    reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to
27 prove his or her conduct on a specified occasion."  Section 1101(b) provides several exceptions to
    the general rule, and allows evidence "that a person committed a crime, civil wrong, or other act
28 when relevant to prove some fact (such as motive, . . . intent . . . [or] knowledge . . .) other than his
    or her disposition to commit such an act."

this evidence for any other purpose except for what I've indicated." RT 3154, 3448-49, 4216-18.

Knowledge evidence: These prior acts were admitted at trial to show Martinez's knowledge that reckless driving was dangerous to human life:

1. Martinez attended traffic school in January 2009, where he was taught about the dangers of speeding and that cars are dangerous if not operated properly.

2. In February 1998, Martinez was involved in a reckless driving incident in which he hit the car of someone who was pursuing him to report that Martinez had stolen the car.

3. Martinez was stopped by the police in April 2002 for tailgating and was warned about the danger of tailgating.

4. Martinez was a passenger in a vehicle that evaded the police on July 24, 2002. (This showed that he "knew that reckless driving would cause the police to terminate pursuit, which was a relevant fact." *Martinez*, at *16.)

5. In August 2004, Martinez drove onto a sidewalk to intentionally hit two men on a bicycle.

6. In March 2010, Martinez was stopped by the police for speeding and tailgating. (This was a reminder of the danger about which he had been warned in incident #3. *Id.*)

7. Martinez was a driver involved in a hit-and-run car crash in November 1997 and fled on foot.

8. Martinez was stopped for speeding in August 2008.

9. Martinez received a ticket in August 2009 for turning right at an intersection while failing to stop at a red light.

10. Martinez fled on foot when stopped by the police on March 16, 2010 for speeding.[6]

The state appellate court explained that, "where a prior driving event is relied upon to show knowledge of the dangers of such a driving event, a court must scrutinize the circumstances of the prior event to determine whether those circumstances informed the driver of the dangers associated with that event." *Martinez*, at *15. It was necessary to distinguish one's awareness that conduct was merely unlawful from awareness that one's conduct was dangerous to human life; e.g., receiving a traffic ticket might only alert a person to the fact that the conduct was unlawful, unless the officer also told the person that the conduct was dangerous to human life. *Id.*

---

[6] Many of the prior acts had gang overtones (e.g., some traffic stops occurred with him and fellow gang members in the car), but the gang overtones were not revealed to the jury.

The state appellate court determined that, four of the ten prior acts admitted to show knowledge should not have admitted. According to the California Court of Appeal, prior acts 1-6 were properly admitted to show Martinez's awareness of the danger of reckless driving, but prior acts 7-10 were not properly admitted under state law. Prior act 7 should not have been admitted because there was no evidence he was the cause of the crash. *Martinez*, at \*15. Prior acts 8 and 9 should not have been admitted because they did not show that he knew that speeding and making a right turn without stopping for a red light were dangerous to human life (as opposed to being merely illegal). *Id*. Prior act 10 should not have been admitted to show knowledge because his flight did not show that he knew speeding was dangerous; however, most of the incident was admissible for the different purpose of showing that an arrest warrant had been issued after Martinez absconded and that he was trying to avoid arrest under that warrant on June 9, 2010. *Id*. at \*15 & n.12.

<u>Motive and intent evidence:</u> Eight prior acts were admitted at trial to show Martinez's motive and/or intent on June 9:

1. Martinez was involved in a hit-and-run incident in November 1997, demonstrating his "intent to escape from responsibility for the harmful results of his driving." *Id*. at \*17.

2. In November 1998, Martinez escaped from a juvenile detention facility, demonstrating his "long-standing intent to avoid the consequences of his conduct." *Id*. at \*17.

3. Martinez tried to flee on foot from the police in June 2002 to avoid arrest.

4. On July 15, 2002, Martinez gave a false name to the police to avoid being arrested on an outstanding warrant.

5. On March 16, 2010, Martinez fled from the police and cut off his GPS monitor. This led to the arrest warrant facing Martinez when he was stopped on June 9, and "was highly relevant to defendant's intent and motive to evade the police at the time of the charged conduct." *Id*. at \*18.

6. Martinez was on parole, with a parole warrant out for his arrest, when stopped on June 9. This "was relevant to show the basis for his motive to flee the police." *Id*.

7. Martinez was involved in a February 1998 reckless driving incident.

8. In August 2009, Martinez refused to provide his address to the police after being stopped for a traffic violation.

Martinez's "intent and motive were material because they provided insight into his state of mind when he engaged in the charged conduct, which was a critical issue at trial." *Id*. at *17. Under state law, evidence was admissible to prove intent if it was "sufficiently similar to support the inference that the defendant probably harbor[ed] the same intent in each instance." *Id*. (citation and internal quotation marks omitted).

The California Court of Appeal found that two of the eight prior acts were not properly admitted on motive and intent. The California Court of Appeal determined that prior acts 1-6 were properly admitted to show Martinez's motive and intent to evade capture by the police on June 9, but prior acts 7-8 were not properly admitted under state law. Prior act 7 should not have been admitted for motive and intent because there was no evidence he tried to flee from the police on that occasion, although (as the defense conceded) the same evidence was relevant to show knowledge of the danger of driving recklessly. *Martinez*, at *17. Prior act 8 should not have been admitted for motive and intent because it did not involve flight from the police or an attempt to avoid arrest. *Id*.

The California Court of Appeal also determined that the prior-acts instructions given to the jury were adequate. The trial court's oral instructions had identified the factual basis for each of the prior acts and cross-referenced the purpose(s) for which each could be used. Although the written limiting instructions did not contain the factual descriptions for each of the incidents or tell the jury that the prior acts could be used to show Martinez's intent, they did once again tell the jury not to conclude from the evidence that Martinez had a bad character or was disposed to commit crime. "The written limiting instruction restricted the purposes for which the prior acts could be used to only knowledge and motive, thereby precluding the jury from using the prior acts to show intent. And defendant could hardly have been prejudiced by the instruction's failure to repeat factual descriptions of the prior acts that his trial counsel was seeking to deemphasize. We presume that the jurors were able to correlate the numbers in the written limiting instruction with the prior acts, particularly since the numbers were assigned chronologically. The trial court did not prejudicially err in giving a more truncated written limiting instruction regarding the prior acts." *Id*. at *19.

The California Court of Appeal further determined that, as to those prior acts that should not have been admitted, their admission did not result in prejudice under the harmless error standard applicable to state law errors. *Martinez*, at *19-20.

> The court erred in admitting four of the 10 prior incidents that were admitted to show knowledge and two of the eight prior incidents that were admitted to show intent and motive. While this was a significant number of prior incidents, the erroneously admitted evidence was not substantively significant for four reasons. First, two of the four incidents erroneously admitted to show knowledge and one of the two incidents erroneously admitted to show intent and motive were properly admitted for other purposes, thereby minimizing any potential for prejudice. Second, the reason that the incidents were erroneously admitted was that they lacked relevance on the issues for which they were admitted, which means that they had little potential to prejudice defendant in light of the limiting instructions. Third, the probative force of the properly admitted prior act evidence was very strong on the issues on which the prior incidents were admitted. Fourth, defendant admitted in his trial testimony that he knew that his conduct was dangerous to human life and that his intent and motive were to escape from the police. In this context, it is not reasonably probable that the jury would have reached an outcome more favorable to defendant in the absence of the erroneously admitted prior act evidence.

*Martinez*, at *20.

Although the state appellate court did not discuss the federal due process claim which had been presented to it, the decision is presumed to be a rejection of the federal constitutional claim on the merits. *Harrington*, 562 U.S. at 99. Thus, this court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Id.* at 102.

2.    Analysis

The United States Supreme Court has never held that the introduction of propensity or other allegedly prejudicial evidence violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991); *id.* at 75 n.5 ("We express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

In *Estelle v. McGuire*, the defendant was on trial for murder of his infant daughter after she was brought to a hospital and died from numerous injuries suggestive of recent child abuse.

36

Defendant told the police the injuries were accidental. Evidence was admitted at trial that the coroner discovered during the autopsy older partially healed injuries that had occurred six to seven weeks before the child's death. *Id.* at 65. Evidence of the older injuries was introduced to prove "battered child syndrome," which "exists when a child has sustained repeated and/or serious injuries by nonaccidental means." *Id.* at 66. The state appellate court had held that the proof of prior injuries tending to establish battered child syndrome was proper under California law. *Id.* In federal habeas proceedings, the Ninth Circuit found a due process violation based in part on its determination that the evidence was improperly admitted under state law. *Id.* at 66-67. The U.S. Supreme Court first held that the Ninth Circuit had erred in inquiring whether the evidence was properly admitted under state law because "federal habeas corpus relief does not lie for errors of state law." *Id.* at 67 (internal citations and quotation marks omitted). The Supreme Court then explained:

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point. [¶] Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial. We hold that McGuire's due process rights were not violated by the admission of the evidence. *See Spencer v. Texas*, 385 U.S. 554, 563–564, 87 S.Ct. 648, 653–654, 17 L.Ed.2d 606 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial . . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure").

*Estelle v. McGuire*, 502 U.S. at 70.

The cited case, *Spencer v. Texas*, 385 U.S. at 563, held that the admission of evidence of prior convictions did not violate due process. The Supreme Court explained in *Spencer* that, although there may have been other, perhaps better, ways to adjudicate the existence of prior convictions (e.g., a separate trial on the priors after the trial on the current substantive offense resulted in a guilty verdict), Texas' use of prior crimes evidence in a "one-stage recidivist trial" did not violate due process. *Id.* at 563-64. "In the face of the legitimate state purpose and the

long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases." *Id*. at 564.

*Estelle v. McGuire* also cited to *Lisenba v. California*, 314 U.S. 219, 228 (1941), in support of the conclusion that the introduction of the battered child syndrome evidence did not so infuse the trial with unfairness as to deny due process of law. *Estelle v. McGuire*, 502 U.S. at 75. In *Lisenba*, the Supreme Court rejected a claim that the admission of inflammatory evidence violated the defendant's due process rights. The evidence at issue in *Lisenba* was live rattlesnakes and testimony about them to show they had been used by the defendant to murder his wife. The Court explained that it did not review questions of the propriety of state law evidence decisions by the judge. "We cannot hold, as petitioner urges, that the introduction and identification of the snakes so infused the trial with unfairness as to deny due process of law. The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process." *Lisenba*, 314 U.S. at 228-29.

These three Supreme Court cases declined to hold that the admission of prejudicial or propensity evidence violates the defendant's due process rights. No Supreme Court cases since *Estelle v. McGuire* have undermined the holdings in these three cases. In other words, there is no Supreme Court holding that the admission of prejudicial or propensity evidence violates due process. Contrary to Martinez's suggestion, *Old Chief v. United States*, 519 U.S. 172 (1997), did not decide a constitutional question; instead, *Old Chief* applied the Federal Rules of Evidence.

The Supreme Court has established a general principle of fundamental fairness, i.e., evidence that "is so extremely unfair that its admission violates 'fundamental conceptions of justice'" may violate due process. *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (due process was not violated by admission of evidence to identify perpetrator and link him to another perpetrator even though the evidence also was related to crime of which defendant had been acquitted)). Thus, the court may consider whether the evidence was "so extremely unfair that its admission violates 'fundamental

conceptions of justice.'" *Id.*

The admission of prejudicial evidence may make a trial fundamentally unfair and violate due process "[o]nly if there are no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions." *Id.* The admission of evidence will violate due process only if there are *no* permissible inferences the jury may draw from the evidence and the evidence is "'of such quality as necessarily prevents a fair trial.'" *Jammal*, 926 F.2d at 920 (internal citation and footnote omitted). *Jammal* is circuit level precedent and could not be the basis for relief under 28 U.S.C. § 2254(d), but it is helpful to give some sense of the severity of the evidentiary blunder that must occur to violate due process.

Here, Martinez does not show that the admission of his prior bad driving incidents and his efforts to avoid the police meet the very demanding standard of being so extremely unfair that their admission violates fundamental conceptions of justice.[7] His knowledge about the consequences of reckless driving was relevant on the issue of malice. His motive and intent to avoid the police on the day of the crash also were relevant to his mental state. Permissible inferences could be drawn from almost all of the prior acts, as the California Court of Appeal explained. The jury was adequately instructed on the inferences that could be drawn. The jury also was instructed repeatedly that the jury was not to take the prior acts evidence to show that Martinez had a bad character or had a propensity to commit crimes. The jury is presumed to have followed these instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them").

Six of the ten prior acts introduced on knowledge supported an inference that Martinez

---

[7] Although the sheer volume of prior bad acts admitted is concerning, and this Court might have reached a different result if examining them under Federal Rule of Evidence 403 (i.e., the federal rule analogous to California Evidence Code 352), that is not the appropriate focus in a federal habeas action.

knew that reckless driving was dangerous to human life, as the California Court of Appeal explained. Two more of the ten prior acts (#7 - a hit and run accident followed by flight, and #10 - flight on foot after being stopped for speeding) introduced on knowledge may not have been relevant for knowledge but were relevant for the different purpose of showing his motive and intent to avoid capture by the police. And the other two prior acts (#8 - speeding, and #9 - unlawful right turn on red light) did not support a permissible inference, but were so minor in comparison to the numerous other properly admitted bad driving episodes that it can be said with certainty that they did not make the trial so extremely unfair that their admission violated fundamental conceptions of justice.

Six of the eight prior acts introduced to show motive and intent supported an inference that he drove recklessly for the purpose of avoiding arrest by the police on June 9, as the California Court of Appeal explained. One more of the prior acts (#7 - reckless driving) introduced on motive and intent was relevant for the different purpose of showing his knowledge that reckless driving was dangerous to human life. The one prior act (#8 - failing to provide an address to the police) that did not support any inference was so minor in comparison with the other prior acts that it can be said with certainty that it did not make the trial so extremely unfair that its admission violated fundamental conceptions of justice.

"[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Bearing in mind the extremely general nature of the Supreme Court's articulation of a principle of "fundamental fairness" – i.e., evidence that "is so extremely unfair that its admission violates 'fundamental conceptions of justice'" may violate due process, *Dowling*, 493 U.S. at 352 – it cannot be said that the California Court of Appeal's unexplained rejection of Martinez's due process claim was contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court. *See generally Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (denying writ because, although Supreme Court "has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling

that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ") (internal citation omitted).

Even if there had been a due process violation in the admission of the prior acts evidence, federal habeas relief would not be available unless the constitutional error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (citation omitted). For reasons similar to those articulated by the California Court of Appeal in finding no prejudice from the alleged state law errors, this court concludes that any erroneous admission of the prior acts evidence did not have a substantial and injurious effect or influence in determining the jury's verdict. The prior acts that were not properly before the jury because they were too dissimilar to the charged offense had little *detrimental* impact on the defense due to their dissimilarity. Some of the prior acts evidence not properly before the jury for one purpose was already before the jury for another purpose. Moreover, due to the similarities within the prior acts evidence -- many traffic incidents and encounters with the police were offered to show knowledge of the dangers of reckless driving and many incidents were offered to show Martinez's desire to avoid arrest by the police -- the few items that might not properly have been admissible as prior acts had no additional impact.

Further supporting the finding that any error was harmless is the fact that much of the prior acts evidence paralleled Martinez's testimony. Although Martinez vehemently disagrees, Respondent is correct that Martinez admitted in his trial testimony that on June 9 he knew that his conduct was dangerous to human life and admitted that his motive and intent were to avoid arrest by the police.[8]

---

[8] Martinez's defense and post-conviction theory that he was not thinking clearly and was not trying to hurt anyone was belied by his testimony that showed he made conscious choices in his driving as he fled from the police. Martinez argues that Respondent and the California Court of Appeal were wrong to state that Martinez admitted in his testimony that he knew his conduct was dangerous to human life. In his traverse, he argues that, to the extent he so testified, he "clarified his testimony during direct examination, that he had misunderstood the prosecutor's questions, and that he was referring to his understanding *at trial* that his conduct had endangered human life." Docket No. 18 at 33. Martinez's cross-examination testimony occurred over two days: the first day he admitted repeatedly that he took various steps to avoid hurting anyone as he did several dangerous traffic maneuvers, but on the second day he took a different tack and

United States District Court
Northern District of California

The evidence of Martinez's guilt was strong. In addition to the evidence about his mental state, the physical acts that had occurred strongly pointed to driving with a conscious disregard of human life. To escape the police, he "abruptly drove away from the traffic stop at high speed across three lanes of heavy traffic, skidded across a raised median, drove across three more lanes of heavy traffic, and maneuvered the Honda at high speed down a narrow bike lane past 20 or more stopped cars *before* entering the intersection" and was driving at speeds near 60 miles per hour when he ran a red light and entered the intersection where the crash occurred. *Martinez*, at *5.

The very short jury deliberations also support the finding that any error was harmless. After a 19-day trial, the jury deliberated less than half a day before finding Martinez guilty. CT

repeatedly said he "wasn't thinking" at various points as he fled from the police on June 9. On the first day of his cross-examination, Martinez testified to actions he took to make his driving on June 9 less dangerous. *See, e.g.,* RT 3886 ("of course" he looked to see if cars were coming before he turned left across two lanes of traffic); 3895-96 (he looked to see if cars were coming in the eastbound lane when he hit the center median); 3891 (he had checked to see that there were no bikes before he drove into the bike lane); 3891 (he saw the light was red); 3891 (he slowed down due to the cars stopped at Tully Road); 3892 (he was able to recognize danger and respond); 3894 (he was aware that he needed to be sure bike lane was clear of bikes because he might hit one, and he was aware that he needed to move over to avoid rear-ending the stopped cars at the intersection because it might hurt or kill someone, including him and Mayra). By contrast, on the second day of his testimony, he testified that he "wasn't thinking" during many maneuvers. *See, e.g.,* RT 4014 ("I didn't realize the risk to human life.") and RT 4014-15 (he didn't realize the risk to human life when he turned left across the lanes of traffic; he did not look in his side-view or rear-view mirrors); 4023 (he doesn't remember the light being red at the intersection and doesn't know why he slowed down); 4026-27 (he "wasn't thinking" about the traffic when he crossed the median and pulled into eastbound traffic lanes on Tully Road); 4030 (he "wasn't thinking" when he moved over to the bike lane to avoid the stopped cars); 4030-31 (he "wasn't thinking" whether there were bicyclists in bike lane); 4031 (he "wasn't thinking" when he went into the intersection); 4032 (he "wasn't thinking" with regard to whether someone might be in the crosswalk). On the second day of his testimony, Martinez testified that he had not understood the questions clearly on the first day of his testimony -- but the questions on the first day were not ambiguous and plainly asked about his thought processes on the day of the crash. The jury, appellate courts, respondent, and this court are not required to credit Martinez's testimony on the second day over his testimony on the first day. As the prosecutor argued in closing argument, it appeared that Martinez realized overnight what he had conceded to by testifying about his careful driving and knew that he had to try a different approach in his second day of testimony. RT 4259. While there may have been some testimony from Martinez that he did not appreciate the risk posed by his driving decisions, there was plenty of testimony that he did, in fact, appreciate the risk to human life posed by his driving decisions.

United States District Court
Northern District of California

685-86, 726. "'Longer jury deliberations weigh against a finding of harmless error because lengthy deliberations suggest a difficult case.'" *United States v. Lopez*, 500 F.3d 840, 846 (9th Cir. 2007) (quoting *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001)); *see, e.g., id.* (2.5-hour jury deliberations in illegal reentry case suggested any error in allowing testimony or commentary on defendant's post-arrest silence was harmless); *Velarde-Gomez*, 269 F.3d at 1036 (4-day jury deliberations supported inference that impermissible evidence affected deliberations). The half-day jury deliberations suggest the jury did not struggle with this case and weigh in favor of finding that any error in admitting the prior acts evidence was harmless. Martinez is not entitled to the writ on this claim.

## H.  Cumulative Error (Claim 7)

Martinez contends that the cumulative effect of several errors warrants reversal. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still be so prejudicial that a conviction must be overturned. *See Alcala v. Woodford,* 334 F.3d 862, 893–95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' *Chambers* [*v. Mississippi*, 410 U.S. 284, 294 (1973)], and thereby had a 'substantial and injurious effect or influence' on the jury's verdict, *Brecht*, 507 U.S. at 637." *Parle v. Runnels,* 505 F.3d 922, 927 (9th Cir. 2007). Here, there were not multiple trial errors to accumulate. Martinez therefore is not entitled to relief under the cumulative error doctrine.

## I.  No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is DENIED.

# CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED on the merits.
The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  March 6, 2018

_____
SUSAN ILLSTON
United States District Judge